UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ESTATE OF K.C. (a minor), by and through
her mother, STEPHANIE SHORB; and
STEPHANIE SHORB,

6:14-cv-1889-TC

FINDINGS & RECOMMENDATION

Plaintiffs,

v.

LIPA (LANE INDIVIDUAL PRACTICE
ASSOCIATION); OREGON HEALTH
AUTHORITY; JOHN E. SATTENSPIEL,
LIPA Senior Medical Director; and TERRY
COPLIN, LIPA Former CEO,

Defendants.

COFFIN, Magistrate Judge:

Plaintiffs bring this action asserting claims for substantive due process violations, wrongful

death, and breach of contract related to Stephanie Shorb's daughter's death at the age of four on

November 22, 2011.

Plaintiff Stephanie Shorb's daughter, plaintiff K.C., was diagnosed in 2009 with ulcerative

colitis. The Oregon Health Plan, administered by defendant Lane Individual Practice Association

Page 1 - FINDINGS & RECOMMENDATION

(LIPA), covered K.C.  Doernbecker's Children's Hospital performed a colectomy in hopes of curing the disease, but residual colitis remained.

Oregon doctors then prescribed Remicaid in an effort to control K.C.'s condition.  However, Remicaid is a "black label" drug with serious side effects and not recommended for children under the age of six.  Plaintiffs allege that while the drug never produced positive results, the doctors simply increased the dosage rather than try other tumor necrosis factor (TNF) blockers. Consequently, through the intervention of a social worker at Care Oregon, K.C. sought out treatment from the Children's Hospital in Seattle for a different course of treatment.

K.C.'s Eugene pediatrician, Dr. Pilar Bradshaw, requested authorization from LIPA for K.C. to receive ongoing treatment from the Seattle Children's Hospital.  LIPA initially granted authorization, but in October of 2011, LIPA's senior medical director, defendant John Sattenspiel, denied treatment.  Sattenspiel, along with the CEO of LIPA, defendant Terry Coplin, allegedly determined that treatment options were available at Oregon Health and Sciences University (OHSU) and Legacy Emanuel Hospitals.

Plaintiffs allege that LIPA's decision, based on an administrative rule that prohibits out of service area care for non-emergency service  when such services are available in area, failed to recognize that K.C.'s care was an emergency situation despite Dr. Bradshaw's and the Seattle doctor's finding that the need for care was "urgent." Plaintiffs further allege that LIPA failed to consider that care at the Seattle hospital (based on the existing relationship) would have been more cost-effective which also permits the coverage under the cited rule.  Finally, plaintiffs allege that LIPA ignored the medical expertise of the Oregon doctor who referred K.C. to Seattle for care.

In the first claim, plaintiffs allege that defendants Sattenspiel and Coplin violated K.C.'s

Fourth and Fourteenth Amendment rights via deliberate indifference to her serious medical needs resulting in her death. In the second claim, plaintiff allege Monell liability against defendant LIPA. In their third claim, plaintiffs allege a wrongful death claim against the Oregon Health Authority (OHA) (which administers the Oregon Health Plan for the entire State) and LIPA via a theory of vicarious liability for the actions of Sattenspiel and Coplin. Finally, plaintiffs allege claim for breach of contract against LIPA and OHA for breach the duty to authorize the medical care at issue.

OHA moves to dismiss the claims against it pursuant to the Eleventh Amendment.

The Eleventh Amendment provides:

> "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

The Amendment affirms the fundamental principle of sovereign immunity which limits the grant of judicial authority in Article III of the Constitution. Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 98 (1984) (Pennhurst II).

A State's Eleventh Amendment protection from suit has been extended to suits brought by a State's own citizens, Hans v. Louisiana, 134 U.S. 1, 10 (1890), and suits invoking the federal question jurisdiction of Article III. Seminole Tribe of Fla. v. Florida, 116 S.Ct. 1114, 1131-32 (1996).

The OHA, is also immune from suit under the Eleventh Amendment. See Shaw v. California Dept. of Alcoholic Beverage Control, 788 F.2d 600, 603 (9th Cir. 1986) (a suit against a State agency is considered to be a suit against the State, and thus is barred by the Eleventh Amendment). "When suit is commenced against state officials, even if they are named and served as individuals, the State itself will have a continuing interest in the litigation whenever State policies

Page 3 - FINDINGS & RECOMMENDATION

or procedures are at stake." Idaho v. Coeur d'Alene Tribe of Idaho, 117 S.Ct. 2028, 2034 (1997).

There are, however, two well-established exceptions to the reach of the Eleventh Amendment. First, Congress may abrogate the States' constitutionally secured immunity by expressing, in unmistakably clear language, its intention to allow the States to be sued in federal court. Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 242-243 (1985). Second, a state may waive its Eleventh Amendment immunity and consent to sued in federal court. Id. at 241; Clark v. Barnard, 108 U.S. 436, 447 (1883). "[A] state will be deemed to have waived its immunity 'only where stated by the most express language or by such overwhelming implication by the text as [w]ill leave no room for any other reasonable construction.'" Atascadero, 473 U.S. at 239-240 (quoting Edelman v. Jordan, 415 U.S. 651, 673 (1974) (internal quotation omitted)).

"Although a state's general waiver of sovereign immunity may subject it to suit in state court, it is not enough to waive the immunity guaranteed by the Eleventh Amendment." Atascadero, 473 U.S. at 241. Here, the State has not consented to having the state law claims asserted against the OHA heard in federal court.

Plaintiffs apparently concede that the Eleventh Amendment bars the claims against OHA. Plaintiff does not provide argument against immunity, but asserts an involuntarily dismissal is necessary to toll the statute of limitations with respect to the filing of the case in state court. That issue cannot be determined by this court. The motion to dismiss should be granted.

///

///

///

///

Page 4 - FINDINGS & RECOMMENDATION

CONCLUSION

For the reasons stated above, the motion to dismiss (#22) should be granted and defendant

Oregon Health Authority should be dismissed from this action.

This recommendation is not an order that is immediately appealable to the Ninth Circuit

Court of appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate

Procedure, should not be filed until entry of the district court's judgment or appealable order. The

parties shall have fourteen (14) days from the date of service of a copy of this recommendation

within which to file specific written objections with the court. Thereafter, the parties shall have

fourteen (14) days within which to file a response to the objections. Failure to timely file objections

to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right

to de novo consideration of the factual issues and will constitute a waiver of a party's right to

appellate review of the findings of fact in an order or judgment entered pursuant to this

recommendation.

DATED this 20 day of March 2015.

_____
THOMAS M. COFFIN
United States Magistrate Judge

Page 5 - FINDINGS & RECOMMENDATION